# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>Willowood USA Holdings, LLC, *et al.*<br>EIN: 81-0829193,<br><br>Debtors.[1] | Case No. 19-11079-KHT<br><br>Chapter 11 |

## DEBTORS' MOTION
## FOR ENTRY OF AN ORDER AUTHORIZING
## (I) CONTINUED USE OF EXISTING CASH MANAGEMENT
## SYSTEM, (II) MAINTENANCE OF EXISTING BANK ACCOUNTS, AND
## (III) AN EXTENSION OF THE DEADLINE TO COMPLY WITH THE DEPOSIT AND
## INVESTMENT REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (the "**Debtors**"), in the above-referenced chapter 11 cases hereby file this motion (this "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing (i) the continued use of the Debtors' existing cash management system, (ii) the Debtors to maintain their existing bank accounts, and (iii) a 60-day extension for the Debtors to either comply with the requirements of section 345(b) of the Bankruptcy Code or file a motion seeking an additional extension or waiver of the requirements of section 345(b) of the Bankruptcy Code. In support of this Motion, the Debtors rely upon and incorporate by reference the Affidavit of Thomas M. Kim in Support of Motion Seeking Expedited Entry of First Day Orders (the "**Kim Affidavit**") filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their employer identification numbers, where applicable, are: Willowood USA Holdings, LLC (9193), Willowood USA, LLC (7337), Willowood, LLC, RightLine LLC (1429), Greenfields Holdings, LLC (5326), Greenfields Marketing Ltd. The Debtors' corporate headquarters is located at 1350 17th Street, Suite 206 Denver, Colorado 80202.

18801897

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Debtors, their estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a), 363, 507, and 541 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A. General Background.**

2. On the date hereof (the "**Petition Date**"), each Debtor other than Willowood USA Holdings, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Willowood USA Holdings, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 15, 2019. The Debtors continue to manage their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No creditors' committee has been appointed in these cases. No request for appointment of a trustee or examiner has been made.

4. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in more detail in the Kim Affidavit.

**B. The Debtors' Cash Management System.**

5. As of the Petition Date, the Debtors, in the ordinary course of their business operations, employ three bank accounts (collectively, the "**Bank Accounts**")[2] with KeyBank, NA (the "**Bank**") that operate in connection with a centralized cash management system (the

---

[2] The last four digits of the Bank Accounts

18801897

"**Cash Management System**"). Through the Bank Accounts, the Debtors efficiently collect, transfer, and disburse funds generated from their operations on a daily basis. The Debtors believe that the Bank Accounts are in a financially stable banking institution with the Federal Deposit Insurance Corporation or other appropriate government-guaranteed deposit protection insurance.

6. Willowood USA, LLC holds each Bank Account in its name. The first account, referred to as the "cash collateral account" or "lock-box account,"[3] is used to receive payments from various sources, including customers. The funds in the lock-box account are swept daily into the Debtors' operating account.[4] Outgoing payments are transferred from the operating account to the disbursing account, sometimes referred to as the "zero balance account," before being issued to the payee.[5] The disbursing account is funded as needed to make payments and is zeroed out every day.[6]

7. Pending the approval of the Debtors' separate motion for approval of post-petitioning financing (the "**DIP Facility**"), funds transferred into the lock-box account will be swept on a daily basis by KeyBank, NA, in its capacity as administrative agent and lender under the Debtors' prepetition revolving credit facility (the "**Revolving Credit Facility**"), and will be applied by KeyBank, NA towards the Debtors' payment obligations under the Revolving Credit Facility. Draws under the DIP Facility will be transferred directly into the operating account.

8. On any given day, the Debtors may process large numbers of transactions through the Cash Management System. The Debtors maintain current and accurate records of all transactions processed through the Cash Management System. Among other benefits, the Cash

---

[3] The last four digits of the lock-box account are (8271).
[4] The last four digits of the operating account are (8289).
[5] The last four digits of the disbursing account are (4725).
[6] Willowood USA holds two additional accounts with KeyBank, NA that the Debtors do not utilize (account numbers 9563, 7699).

18801897

Management System permits the Debtors to accurately monitor cash availability at all times. The Cash Management System also permits the Debtors to centrally manage and track the collection and transfer of funds.

## RELIEF REQUESTED

9. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 345, and 363 of the Bankruptcy Code, granting the following relief:

(a) Authorizing the Debtors to continue to use the Cash Management System, subject to any modification or other relief granted by order of this Court relating thereto, including the following:

  i) the continued use of the existing Bank Accounts with the same names and account numbers as such Bank Accounts existed immediately prior to the Petition Date (with the option to the Debtors and the Bank of streamlining their Cash Management System by closing or consolidating Bank Accounts in accordance with the terms and conditions of the existing account and service agreements);

  ii) the ability of the Debtors to deposit funds into and withdraw funds from any of the Bank Accounts (subject to available funds or, in the case of zero balance accounts, subject to the availability of funds in the applicable linked funding accounts) by all usual means, including but not limited to checks, wire transfers, electronic funds transfers, and other debits;

  iii) the ability of the Debtors to otherwise treat the Bank Accounts, along with any accounts opened postpetition, for all purposes as debtor in possession accounts;

  iv) authorizing and directing the Bank to maintain, service, and administer such deposit accounts or investment accounts, without interruption and in the ordinary course of business, in accordance with applicable non-bankruptcy law and the account agreements and/or other service documentation between the applicable Bank and the Debtors relating to such accounts;

  v) authorizing and directing the Bank to rely on the representations of the Debtors as to which Disbursements (as defined herein) are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is authorized by an order of this Court; and

18801897

      vi)      authorizing the Bank to charge and collect, and authorizing but not directing the Debtors to pay, the prepetition and postpetition service charges and other fees and expenses to which the Bank are entitled under the terms of their account agreements and/or other service documentation with the Debtors;

    (b)    Authorizing the Debtors to maintain their existing investment practices, and

    (c)    Waiving the requirements of Bankruptcy Code section 345(b) as to the Cash Management System for a period of sixty (60) days following the Petition Date.

    10.    Contemporaneously with the filing of this Motion, the Debtors have filed other motions seeking authority to pay certain prepetition obligations, including obligations to employees, critical vendors, and other entities. With respect to certain of these prepetition obligations, the Debtors already have issued, in the ordinary course of business, checks and other debits that have yet to clear the banking system. In other instances, the Debtors will issue checks or other debits postpetition on account of the prepetition obligations once this Court has entered an appropriate order permitting the Debtors to do so. The Debtors intend to inform the Bank which prepetition checks and other debits should be honored pursuant to orders of this Court authorizing such payment. Regardless of any orders of this Court authorizing pre-petition and/or post-petition payments by the Debtors, the Bank shall not be required to honor any overdrafts, checks, drafts, ACH transfers, debits, wires, or other transfers from the Bank Accounts (collectively, the "**Disbursements**") unless there are collected and immediately available funds in the Bank Accounts sufficient to cover such requests.

    11.    As a result of the foregoing, the Debtors request that the Bank be authorized to accept and honor all representations from the Debtors as to which Disbursements should be honored or dishonored consistent with any order(s) of this Court and governing law, whether such Disbursements are dated or made prior to, on, or subsequent to the Petition Date. To the extent that the Debtors direct that any Disbursement be dishonored or the Bank inadvertently

dishonor any Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. The Debtors further request that the Bank shall not be liable to any party on account of (a) following the Debtors' instructions or representations with respect to any order(s) of this Court, or (b) the honoring of any prepetition check or item in a good faith belief that this Court has authorized such prepetition check or item.

12. As described in greater detail below, the Debtors submit that the relief requested herein will help to ensure the Debtors' orderly entry into and administration in chapter 11 and avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of these chapter 11 cases.

## BASIS FOR RELIEF

**A. Continued Use of the Debtors' Existing Cash Management System and Bank Accounts is Appropriate and Justified Under the Circumstances.**

13. The Office of the United States Trustee has established operating guidelines for debtor in possession relating to cash management systems (the "**UST Guidelines**"). The UST Guidelines, which are designed to provide a clear demarcation between a Debtors' prepetition and postpetition operations, require, among other things, that a debtor (a) close all existing bank accounts, (b) open new accounts designated as "debtor in possession" accounts, (c) make all post-petition disbursements by check, and (d) include the words "debtor in possession" and certain other information on all checks. *See* 28 U.S.C. § 586 and UST Guidelines.

14. In larger chapter 11 cases, courts have routinely waived the requirements of the UST Guidelines, recognizing that they are often impractical and potentially detrimental to a Debtors' postpetition business operations and restructuring efforts. *See, e.g., Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1061 (3d Cir. 1993) (finding that a requirement to

6

maintain all accounts separately "would be a huge administrative burden and economically inefficient"); *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets").

15. Any disruption of the Debtors' accounting and cash management procedures would be burdensome and disruptive, and could adversely impact the Debtors' efforts to operate during these chapter 11 cases. For instance, the Debtors' customers make payments to the Debtors by wiring funds or sending checks to the lock box account, which is associated with their bank accounts. If the Debtors close current Bank Accounts, they will have to provide every customer with new wire instructions. Even assuming the Debtors are able to timely communicate with each customer, closing their current Bank Accounts creates a substantial risk that payments will go unreceived. Additionally, customers may have issued checks for payment that have not yet cleared. If the Debtors close the exiting Bank Accounts, there could be a substantial delay in the time it takes to cash outstanding checks. At this critical juncture, the Debtors must be able to conduct "business as usual" to the extent possible. To this end, it is essential that the Debtors be permitted to continue to use their existing Cash Management System and Bank Accounts.

16. The Cash Management System and Bank Accounts provide numerous benefits to the Debtors and their estates. Among other benefits, the Debtors have the capability through the Cash Management System to distinguish between prepetition and postpetition transactions without the necessity of closing the Bank Accounts and opening new ones. Moreover, the Debtors have the ability to generate through the Cash Management System detailed and accurate reports.

17. Based on the foregoing, there is good cause for waiver of the requirements of the UST Guidelines. The continued use of the Cash Management System and the Bank Accounts is in the best interests of the Debtors' estates and no party in interest would be prejudiced in any way by their continued use.

18. The Court has authority to grant the relief requested in this Motion under Bankruptcy Code section 105(a), which empowers bankruptcy courts to enter "any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Code section 105(a) codifies the "equitable power" of bankruptcy courts and provides "broad authority" to accomplish tasks important to the implementation of the Bankruptcy Code. *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) (stating that the statutory directive of section 105(a) is "consistent with the traditional understanding that bankruptcy courts, as courts in equity, have broad authority to modify creditor-debtor relationships").

**B.     The Court Should Allow the Debtors 60 Days to Comply With the Requirements of Section 345(b) of the Bankruptcy Code.**

19. Pursuant to Bankruptcy Code section 345(b), any deposit or other investment made by a debtor, except those insured or guaranteed by the United States or a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, must be secured by either a bond in favor of the United States that is secured by the undertaking of a corporate surety approved by the United States Trustee for the relevant district or the deposit of securities of the kind specified in 31 U.S.C. § 9303. Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause." *See* 11 U.S.C. § 345(b); *see also In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

20. In *Service Merchandise*, the court identified the following factors as a guide for determining whether cause exists to waive the requirements of section 345(b):

    (a) the sophistication of the Debtors' business;

    (b) the size of the Debtors' business operations;

    (c) the amount of the investments involved;

    (d) the bank ratings of the financial institutions where the Debtors' funds are held;

    (e) the complexity of the case;

    (f) the safeguards in place within the Debtors' own business of insuring the safety of the funds;

    (g) the Debtors' ability to reorganize in the face of a failure of one or more of the financial institutions;

    (h) the benefit to the debtor;

    (i) the harm, if any, to the estate; and

    (j) the reasonableness of the Debtors' request for relief in light of the overall circumstances of the case.

*Id.* at 896.

21. The court also concluded that the benefits of waiving the requirements of section 345(b) far outweigh any potential harm to the estates, and the failure to waive the requirements "would 'needlessly handcuff' these debtors' reorganization efforts." *Id*. at 897.

22. Historically, all excess funds of the Debtors have been maintained in interest-bearing domestic bank accounts insured by the United States (through the FDIC or other appropriate government-guaranteed deposit protection insurance). Any investment of the Debtors' excess funds is managed exclusively through the Cash Management System. To the extent that any of the Debtors' funds are not deposited in accordance with section 345 of the Bankruptcy Code, the Debtors request that the Court allow them a 60-day extension of time to (a) comply with the requirements of section 345(b) of the Bankruptcy Code or (b) file a motion

seeking an additional extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

**C.     The Requirements of Bankruptcy Rule 6003(b) Have Been Satisfied.**

23.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm" a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date.  While the Debtors do not anticipate that any prepetition amounts will be due to the Bank on account of maintaining the Cash Management System, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, the requirements of Bankruptcy Rule 6003 for expedited relief are satisfied, and that Bankruptcy Rule 6003 has been satisfied to permit such payments, if any are necessary.

**D.     Cause Exists for Waiver of the Stay Imposed by Bankruptcy Rule 6004(h).**

24.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**RESERVATION OF RIGHTS**

25.     Notwithstanding anything to the contrary in this Motion, the Debtors reserve the right to close any of their existing Bank Accounts and/or to open one or more new accounts as may be necessary in the Debtors' business judgment and consistent with any requirements that

may be imposed by this Court; provided, however, that the Debtors shall not close any existing Bank Accounts and open one or more new accounts in the name of the Debtors with another financial institution, without the consent of the Bank where the account is being closed. The Debtors will give notice, however, to the Office of the United States Trustee and any official committee that may be appointed in these cases prior to closing any of their existing Bank Accounts or opening any new accounts.

## NOTICE

26. In compliance with Local Rule 2081-1(b), notice of this Motion has been or will immediately be served by facsimile, email, overnight mail, or hand delivery, to: (i) the United States Trustee for the District of Colorado (ii) those entities or individuals included on the Debtors' list of 20 largest unsecured creditors on a consolidated basis, (iii) Latham & Watkins LLP, Attn: Lindsey Henrikson, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611 and Markus Williams & Young LLC, Attn: James T. Markus, 1700 Lincoln, Suite 4550, Denver, Colorado 80203, (iv) Moye White LLP, Attn: Timothy M. Swanson, 16 Market Square, 6th Floor, 1400 16th Street, Denver, Colorado 80202, (v) all parties requesting notices pursuant to Bankruptcy Rule 2002, and (vi) the IRS and other relevant government agencies. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto, (a) authorizing the Debtors to (i) continue to use their existing cash management system, and (ii) maintain their existing bank accounts, (b) granting a 60-day extension for the Debtors to either comply with the requirements of section 345(b) of the Bankruptcy Code or file a motion seeking an additional extension or waiver of the requirements

of section 345(b) of the Bankruptcy Code, and (c) granting such other and further relief as is just and proper.

Date: February 27, 2019.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

*s/ Andrew J. Roth-Moore*
Michael J. Pankow, #21212
Joshua M. Hantman, #42010
Andrew J. Roth-Moore, DE Bar No. #5988
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
jhantman@bhfs.com
aroth-moore@bhfs.com

*Proposed Attorneys for the Debtors*

18801897