# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:

Willowood USA Holdings, LLC, *et al.*
EIN: 81-0829193,

Debtors.[1]

Case No. 19-11079-KHT

Chapter 11

### ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) APPROVING PROCEDURES FOR THE ASSUMPTION, ASSIGNMENT, AND SALE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE AUCTION AND SALE HEARING AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) SCHEDULING AN AUCTION AND SALE HEARING, AND (F) GRANTING RELATED RELIEF

This matter having come before this Court on the motion of Willowood USA, LLC and its affiliated Debtors (together, the "**Debtors**")[2] for Orders Pursuant to §§ 105(a), 363(b), and 365 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court of the District of Colorado (the "**Local Rules**") (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Approving Procedures for the Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their employer identification numbers, where applicable, are: Willowood USA Holdings, LLC (9193), Willowood USA, LLC (7337), Willowood, LLC, RightLine LLC (1429), Greenfields Holdings, LLC (5326), Greenfields Marketing Ltd.  The Debtors' corporate headquarters is located at 1350 17th Street, Suite 206 Denver, Colorado 80202.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion, the related Asset Purchase Agreement (the "**APA**") by and between the Debtors and AMVAC Chemical Corporation ("**Stalking Horse Bidder**"), or the Bidding Procedures, as appropriate.

1

the Auction and Sale Hearing and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Scheduling an Auction and Sale Hearing, and (F) Granting Related Relief (the "**Bidding Procedures Motion**"), all in connection with the Motion of the Debtors for an Order (A) Authorizing and Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, and Encumbrances and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (B) Waiving the 14-Day Stay of Fed. R. Bankr. P. 6004(h) and 6006(d) (the "**Sale Motion**"); and the Debtors, by the Bidding Procedures Motion, having requested the entry of an order (this "**Bidding Procedures Order**") (a) approving bidding procedures in connection with the Sale (the "**Bidding Procedures**"); (b) approving the form and manner of (i) the notice that will be filed with this Court and served on all creditors and other parties in interest regarding the Auction, the Sale, and the Sale Hearing as set out herein (the "**Notice of Sale**") and (ii) the notice (the "**Assignment Notice**"), which shall be filed and served on all non-debtor counterparties to any executory contract or unexpired lease, including counter-parties to all data compensation agreements (the "**Contracts**") of the Debtors, of the potential assumption and assignment (the "**Assumption and Assignment**") of such Contracts to the Successful Bidder(s) in connection with the Sale, and the cure amounts in respect thereof; and (c) scheduling a hearing at which this Court will consider approval of the Sale pursuant to and as described in the APA (or any other Successful Bid in accordance with the Bidding Procedures) (the "**Sale Hearing**"); and the Debtors having determined that the Bidding Procedures, and the other relief related thereto requested in the Sale Motion will induce competitive bidding for the Debtors' assets and will maximize the value of the Debtors' estates; and this Court having reviewed and considered (i) the Bidding Procedures Motion, the Sale Motion and the exhibits thereto; (ii) arguments of counsel in support of the entry of this Bidding

2

Procedures Order; and (iii) the Objections thereto at the hearing for such purpose (the "**Bidding Procedures Hearing**"); and it appearing that the relief requested in the Bidding Procedures Motion is necessary and in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest therein; and it appearing that due and proper notice of the Bidding Procedures Motion has been given as set forth in the Bidding Procedures Motion and that no other or further notice need be given; and reasonable opportunity to object or be heard regarding the relief granted herein having been afforded to all interested persons and entities, including but not limited to the Notice Parties (as defined below); and upon the record of the Bidding Procedures Hearing; and after due deliberation thereon; and good cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (N), and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      As evidenced by the certificates of service previously filed with this Court, and based on the representations of counsel at the Bidding Procedures Hearing, (i) proper, timely, adequate, and sufficient notice of the Bidding Procedures, the form and manner of providing the Notice of Sale, the Assignment Notice, the Bidding Procedures Hearing and the other relief related thereto requested in the Bidding Procedures Motion has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1; (ii) such notice was good and sufficient and appropriate under

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

the particular circumstances; and (iii) no other or further notice of Bidding Procedures, the form and manner of the Notice of Sale and the Assignment Notice, the Bidding Procedures Hearing, and the other relief related thereto requested in the Bidding Procedures Motion is necessary or shall be required.

C.      Reasonable opportunity to object or be heard with respect to the Bidding Procedures Motion and the relief requested in the Bidding Procedures Motion has been afforded to all interested persons and entities, including, without limitation: (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Debtors or the Assets; (ii) any entities known to have asserted any Encumbrance in or upon the Assets; (iii) each of the non-debtor counterparties to the Contracts (each a "**Counterparty**"); (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (v) all parties to the APA (or any other Successful Bid in accordance with the Bidding Procedures) and all related agreements; (vi) the Office of the United States Trustee; (vii) the Internal Revenue Service; (viii) the Environmental Protection Agency; (ix) all entities that have requested notice in accordance with Bankruptcy Rule 2002; and (x) all other known creditors of the Debtors.

D.      The Debtors have articulated good and sufficient reasons for approving (i) the Bidding Procedures; (ii) the form and manner of the Notice of Sale; (iii) the form and manner of providing the Assignment Notice; and, in connection therewith, (iv) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Contracts (the "**Cure Costs**") and to address any other disputes in connection with the Assumption and Assignment pursuant to section 365 of the Bankruptcy Code; and (v) the other relief related thereto requested in the Bidding Procedures Motion.

4

E.      The Debtors have articulated good and sufficient reasons for scheduling the Sale Hearing as set forth herein.

F.      The Debtors' notice of the Auction, the Sale, the Sale Hearing, and the Assumption and Assignment as described herein is appropriate and reasonably calculated to provide interested parties with timely and proper notice, and no other or further notice is required.

G.      The Bid Protections (as defined in the Bidding Procedures Motion) are reasonable, necessary, and appropriate because they were necessary to induce the Stalking Horse Bidder to serve as stalking horse, which sets a baseline for an orderly auction and sale process;

H.      The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the proceeds from the Sale.  Under the circumstances, the Bidding Procedures constitute a reasonable, sufficient, adequate, and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for the Assets.

I.      Time is of the essence with respect to the entry of this Bidding Procedures Order.

J.      Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, and other parties-in-interest.

K.      The Bidding Procedures Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The procedures set forth in the Bidding Procedures Motion are APPROVED as set forth herein.

2.      Any objections to entry of this Bidding Procedures Order or the relief granted herein that have not been withdrawn, settled or waived and all reservations of rights included in such objections, are overruled in all respects on the merits.

*Bidding Procedures*

3.      The Bidding Procedures set forth in **Exhibit A** hereto and the Assumption and Assignment Procedures (as defined below) are hereby **APPROVED** and the Bidding Procedures shall be fully incorporated into this Bidding Procedures Order.  The Bidding Procedures and the Assumption and Assignment Procedures shall be used for (i) marketing, negotiating, and consummating the Sale of the Assets free and clear of all Encumbrances in accordance with section 363 of the Bankruptcy Code, and (ii) the assumption and assignment of executory contracts and unexpired leases, including data compensation agreements, in accordance with section 365 of the Bankruptcy Code and shall govern all proceedings relating to the Sale, the APA, and any subsequent bids for the Assets in these Bankruptcy Cases.  The Debtors are hereby authorized to act in accordance with the Bidding Procedures and the Assumption and Assignment Procedures.  Furthermore, the Debtors are authorized to amend the Bidding Procedures governing the Auction, if any, if in their reasonable business judgment after consultation with their secured lenders, Key Bank, National Association and Tree Line Direct Lending, LP (the "**Secured Lenders**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and the other affected parties, the Debtors conclude that such amendment is in the best interest of the estates.

4.      The failure specifically to include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the

6

effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

5. To constitute a "Qualified Bid," any offer for the Assets (or a portion thereof) must be made in accordance with the terms of the Bidding Procedures; *provided* that the APA is, and is hereby deemed to be, a Qualified Bid. The Stalking Horse Bidder, and any entity that submits a timely Qualified Bid accompanied by all items required to be submitted along therewith in accordance with the Bidding Procedures (an "**Initial Qualifying Bid**"), each shall be deemed a "**Qualified Bidder**."

6. No party, other than the Stalking Horse Bidder, submitting any offer to purchase the Assets (or a portion thereof) or having made a Qualified Bid of any nature: (a) may request as part of any such offer any expense reimbursement, break-up fee, or termination payment or any other similar fee or payment in connection with the Sale process contemplated by these Bidding Procedures; or (b) shall be entitled to any of the foregoing payments for having tendered any such offer to purchase, or for agreeing to purchase, the Assets (or a portion thereof); *provided, however*, the Debtors in their sole discretion may, following entry of this Bidding Procedures Order, be authorized, but not obligated, in an exercise of their reasonable business judgment and after consulting with the Secured Lenders and Committee, (i) select one or more potential bidders to act as a stalking horse bidder for any of the Assets other than those specified in the Stalking Horse Bidder's APA (an "**Additional Stalking Horse Bidder**"), and may agree to provide such Additional Stalking Horse Bidder(s) certain bid protections, including an expense reimbursement and/or a break-up fee; provided that any such bid protections shall be subject to approval by this Court, which the Debtors may seek on an expedited basis; and (ii) without a

requirement of Court approval, reimburse any Qualified Bidder's expenses associated with the bidding process and the Auction up to $50,000.

7.      To participate at the Auction, a Qualified Bidder must submit its bid in a form acceptable to the Debtors (with copies to certain professionals as explained in the Bidding Procedures) on or before **April 4, 2019 at 5:00 p.m. (prevailing Mountain Time)** (the "**Bid Deadline**"), as further described in the Bidding Procedures.

8.      The Auction, if any, shall be conducted at the offices of Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202, on **April 9, 2019 at 9:00 a.m. (prevailing Mountain Time)**, or at such other time and place as Debtors may designate.

9.      The Committee Members' respective counsel may attend the Auction.

10.     As soon as practicable, but no later than **April 10, 2019**, the Debtors shall serve the Sale Notice Parties (defined below) via first-class mail, electronic mail, or other reasonable means with a notice indicating the identity of the winning bidder(s), the purchase price(s), the EPA Registrations (as defined in the Bidding Procedures Motion) to be sold, a statement regarding how the asset purchase agreement(s) submitted by the winning bidder(s) proposes to treat data compensation liability, and, if available, a list of the proposed Assumed Contracts (as defined below).

*Bidding Protections*

11.     The Stalking Horse Bidder Fee and Expense Reimbursement[4] are APPROVED.

12.     The Stalking Horse Bidder shall be entitled to receive the Stalking-Horse Bidder Fee and Expense Reimbursement, subject to the terms and conditions set forth in the APA, provided that in no event will the Stalking-Horse Bidder Fee or Expense Reimbursement be paid

---

[4] Pursuant to the terms of the APA, the Stalking Horse Bidder Fee is $500,000 and the Expense Reimbursement reasonable out of pocket expenses not to exceed $125,000.

absent a Sale Order.  Any Expense Reimbursement and/or Breakup Fee shall be paid from the proceeds arising from the consummation of any applicable Alternative Transaction (as defined in the APA) free and clear of all Liens and prior to any other distribution of such proceeds.

*Notice, Objection Deadline to Sale Order, and Sale Hearing*

13.     Notice of the Bidding Procedures, the Auction, if any, the Sale, the Sale Hearing, the Assumption and Assignment Procedures, and the relief requested in the Sale Motion with respect thereto shall be good and sufficient notice, and no other or further notice shall be required if given as follows:

(a)     the Debtors shall file on the docket the Notice of Sale substantially in the form attached to the Bidding Procedures Motion as Exhibit 2;

(b)     on **March 22, 2019**, the Notice of Sale substantially in the form attached to the Bidding Procedures Motion as Exhibit 2, along with this Bidding Procedures Order and the Bidding Procedures, shall be served by first-class mail or electronic mail upon (i) all entities known to the Debtors to have asserted any Encumbrance in or upon the Assets (or a portion thereof); (ii) all federal, state, and local regulatory or taxing authorities or governmental authorities that have a reasonably known interest in the relief requested by the Sale Motion (including the Internal Revenue Service); (iii) the Office of the United States Trustee for the District of Colorado; (iv) all known creditors and other parties-in-interest of the Debtors; and (v) all parties to data compensation agreements; (vi) the counsel for the Committee; and (vii) all entities requesting notice pursuant to Bankruptcy Rule 2002;

(c)     on **March 22, 2019**,  Piper Jaffray & Co. shall serve the Notice of Sale substantially in the form attached to the Bidding Procedures Motion as Exhibit 2, along with this Bidding Procedures Order and the Bidding Procedures via first-class mail, electronic mail, or

other appropriate means on all entities known to the Debtors to have expressed an interest in the Assets (the notice parties listed in paragraphs 13(b) and (a),  the "**Sale Notice Parties**"); and

> (d) within two (2) business days after entry of this Bidding Procedures Order, the Assignment Notice, substantially in the form attached to the Sale Motion as Exhibit 3, shall be served by first-class mail upon each counterparty to the potential Assumed Contracts.

14. The Sale Hearing will take place on **April 16, 2019 at 9:30 a.m. (prevailing Mountain Time)** in the courtroom of the Honorable Kimberley H. Tyson in the United States Bankruptcy Court for the District of Colorado, 721 19th St., Denver, Colorado 80202.

15. The Sale Hearing to consider approval of the Sale to the Successful Bidder (or to approve the APA if the Successful Bid is by the Stalking Horse Bidder) may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open Court or on this Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

16. Objections to the relief sought in the Sale Order shall be in writing, filed and served so as to be actually received by (i) the Debtors, Attn: Jason Urband; (ii) the Debtors' Chief Restructuring Officer, r² advisors, LLC, 1350 17th St., Suite 206, Denver, CO 80202, Attn: Thomas Kim; (ii) counsel for the Debtors, Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver, CO 80202, Attn: Michael J. Pankow; (iii) counsel for the Stalking Horse Bidder, Jeffrey Garfinkle, Buchalter, P.C., 18400 Von Karman Avenue, Suite 800, Irvine, CA 96212; (iv) counsel for Key Bank, National Association, Moye White, 1400 16th St., 6th Floor, Denver, CO 80202, Attn:  Timothy Swanson; and (v) counsel for Tree Line Direct Lending, LP, Latham & Watkins LLP, 330 North Wabash Ave., Suite 2800, Chicago, IL 60611, Attn: Matthew L. Warren and Markus Williams & Young, 1700 Lincoln Street, Suite 4550,

Denver, Colorado 80203, Attn: James T. Markus; (vii) counsel for the Committee, CKR Law

LLP, 1330 Avenue of the Americas, 14th Floor, New York, New York 10019; Attn: David M.

Banker; and (viii) the Office of the United States Trustee, Byron G. Rogers Federal Building,

1961 Stout St., Ste. 12-200, Denver, CO 80294 (collectively, the "**Notice Parties**") **by 5:00 p.m.**

**(Mountain Time) on April 12, 2019**.

*Assumption and Assignment Procedures*

17.     The following procedures (the "**Assumption and Assignment Procedures**")

shall govern the Assumption and Assignment:

(a)     The Debtors shall, within two (2) business days after the date of this

Bidding Procedures Order, serve on each Counterparty an Assignment Notice specifying the

Cure Cost and the potential for the Debtors to assume and assign each of the Contracts to the

Stalking Horse Bidder or other Successful Bidder(s).  If the Debtors identify additional executory

contracts or unexpired leases that might be assumed by the Debtors and assigned to the Stalking

Horse Bidder (or other Successful Bidder(s)) not set forth in the original Assignment Notice, the

Debtors shall promptly send a supplemental notice (a "**Supplemental Assignment Notice**") to

the applicable counterparties, and such additional contracts or leases shall be deemed Contracts

for purposes of this Order.

(b)     Objections, if any, to the proposed Cure Costs, or to the proposed

Assumption and Assignment, including, but not limited to, objections relating to adequate

assurance of future performance by the Stalking Horse Bidder or objections relating to whether

applicable law excuses the Counterparty from accepting performance by, or rendering

performance to, a Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code,

must be in writing and filed with this Court and served on the Notice Parties so as to be received

11

no later than **5:00 p.m. (Mountain Time) on April 12, 2019** (the "**Designation and Cure Objection Deadline**"); *provided*, *however*, that in the event the Successful Bidder(s) is a bidder other than the Stalking Horse Bidder (which, if applicable, will be set forth in the Notice of Successful Bidder and Assumed Contracts), objections relating to adequate assurance of future performance may be raised at any time prior to or during the Sale Hearing; *provided further*, *however*, that for any counterparty that receives a Supplemental Assignment Notice, the Designation and Cure Objection Deadline shall be the earlier of (i) ten (10) days after the mailing of the Supplemental Assignment Notice, or (ii) two (2) business days prior to the Sale Hearing.

(c)     Within twenty-four (24) hours after the conclusion of the Auction, the Debtors shall file a notice (the "**Notice of Successful Bidder and Assumed Contracts**"), which shall state (i) the identity of the Successful Bidder(s), and (ii) the Contracts that the Debtors proposes to assume and assign to the Successful Bidder(s) (the "**Assumed Contracts**").

(d)     Where a Counterparty files an objection meeting the requirements set forth herein, objecting to the assumption by the Debtors and assignment to a Successful Bidder of such Contract (the "**Disputed Designation**") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "**Disputed Cure Costs**"), the Debtors, the Stalking Horse Bidder, or the other Successful Bidder(s) (as the case may be), and the Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.  If the Debtors, the Counterparty, and the Stalking Horse Bidder (or the other Successful Bidder(s), as the case may be), determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by this Court at the Sale Hearing.  If

12

this Court determines at the Sale Hearing that the Assumed Contract will not be assumed and assigned, then such executory contract shall no longer be considered an Assumed Contract, *provided*, *however*, that after such determination is made by this Court, the Debtors may propose a new Cure Cost in accordance with the procedures set forth herein, including providing the applicable Counterparty with the Assignment Notice setting forth the redesignation and proposed new Cure Cost of the Assumed Contract.  Notwithstanding the foregoing, the Debtors, in consultation with the Stalking Horse Bidder, or the other Successful Bidder(s) (as the case may be), may at any time withdraw its application to this Court for authorization to assume and assign any Assumed Contract that is the subject of a Disputed Designation.

(e)     Other than with respect to the ability to raise objections relating to adequate assurance of future performance of a Successful Bidder other than the Stalking Horse Bidder at any time prior to or during the Sale Hearing, any Counterparty to a Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Contract by the Designation and Cure Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Contract, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, or the Stalking Horse Bidder (or the other Successful Bidder(s), as the case may be).

(f)     If the Counterparty to a Contract fails to timely object to the assumption and assignment of a Contract or the proposed Cure Cost relating thereto by the Designation and Cure Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of this Court approving an assumption and assignment, such Contract may be assumed by the Debtors and assigned to the Successful Bidder, and the proposed Cure Cost

13

related to such Contract shall be established and approved in all respects, subject to the conditions set forth directly below.

(g)   The Debtors' decision to assume and assign the Assumed Contracts is subject to Court approval and consummation of the Sale.  Accordingly, subject to the satisfaction of conditions in connection with the Sale, the Debtors shall be deemed to have assumed and assigned the Assumed Contracts as of the date of and effective only upon the Closing Date (as defined in the APA (or any other Successful Bid in accordance with the Bidding Procedures)), and absent such closing, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.  Additionally, inclusion of any document on the list of Contracts in the Assignment Notice shall not constitute or be deemed to be a determination or admission by the Debtors or the Stalking Horse Bidder (or a Successful Bidder, as the case may be) that such document is, in fact, an executory contract within the meaning of the Bankruptcy Code, all rights with respect thereto being expressly reserved.

(h)   Except as may otherwise be agreed to by the parties to an Assumed Contract, or as agreed to by the Debtor and the Successful Bidder(s), the defaults under the Assumed Contracts that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Successful Bidder shall pay all Cure Costs relating to an assumed executory contract that accrue on or after the Closing Date,  and the Debtors shall pay any remaining Cure Costs, within ten days after the later of (i) the Closing Date; (ii) the date on which such Assumed Contract is deemed assumed and assigned; or (iii) the date on which the

14

Successful Bidder or Debtors (as applicable) and contract counterparty otherwise agree to in writing.[5]

18.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Bidding Procedures Order shall be effective and enforceable immediately upon entry.

19.     Notwithstanding anything to the contrary in this Order, any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any debtor-in-possession financing and/or cash collateral order.

20.     This Court shall retain jurisdiction over any matter or dispute arising from or related to implementing this Bidding Procedures Order.

Dated: <u>March 22, 2019</u>.

BY THE COURT:

_____

The Honorable Kimberley H. Tyson
United States Bankruptcy Judge

---

[5] Pursuant to Section 4(b)(iv), (v) of the APA, the Stalking Horse Bidder's Cure Cost obligations also include the Debtors' liabilities to Sulfur Mills for Clomazone and India Pesticides Limited for Thiobencarb, regardless of when they accrue.

## EXHIBIT A

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | |
| | Case No. 19-11079-KHT |
| Willowood USA Holdings, LLC, *et al.* | |
| EIN: 81-0829193, | Chapter 11 |
| | |
| Debtors.[1] | |

## BIDDING PROCEDURES

By the motion dated February 27, 2019 (the "**Motion**"),[2] Willowood USA, LLC and its

affiliated Debtors (the "**Debtors**"), the debtors-in-possession in the above-captioned cases under

Chapter 11 of the United States Bankruptcy Code (these "**Bankruptcy Case**"), sought approval

of, among other things, the procedures pursuant to which they will determine the highest or

otherwise best offer for the sale (the "**Sale**") of any or substantially all of the Debtors' assets (the

"**Assets**"), including the sale of those Assets specified in that certain Asset Purchase Agreement

(the "**Covered Assets**") by and between the Debtors and AMVAC Chemical Corporation

("**Stalking Horse Bidder**") (the "**APA**") attached to the Motion (as the same may be amended).

On March 22, 2019, the United States Bankruptcy Court for the District of Colorado (the

"**Bankruptcy Court**") entered an order (the "**Bidding Procedures Order**"), which, among

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their employer identification numbers, where applicable, are: Willowood USA Holdings, LLC (9193), Willowood USA, LLC (7337), Willowood, LLC, RightLine LLC (1429), Greenfields Holdings, LLC (5326), Greenfields Marketing Ltd.  The Debtors' corporate headquarters is located at 1350 17th Street, Suite 206 Denver, Colorado 80202.

[2] The "**Motion**" referred to herein is the Motion for Entry of Orders (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Approving Procedures for the Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice of the Auction and Sale Hearing and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Scheduling an Auction and Sale Hearing, and (F) Granting Related Relief.  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

1

other things, authorized, on a final basis, the Debtors to determine the highest or otherwise best price for the Assets through the process and procedures set forth below (the "**Bidding Procedures**").

On **April 16, 2019 at 9:30 a.m. (prevailing Mountain Time)** (or such other date and time as may be designated), as further described below, in the Motion and in the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") at which the Debtors shall seek entry of an order (the "**Sale Order**") authorizing and approving the Sale of the Assets pursuant to the terms of the Successful Bid (as defined below).

1.      **Initial Indication of Interest**

(a)      Any potential bidder is invited to submit a non-binding initial indication of interest (an "**Initial Indication**") for any or all of the Assets on or before **March 29, 2019**. Initial Indications should be submitted in writing to (i) counsel for the Debtors, Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver CO 80202, Attn: Michael J. Pankow; mpankow@bhfs.com; (ii) Piper Jaffray & Co., 345 Park Avenue, Suite 1200, New York, NY 10154, Attn: Teri Stratton; Teri.L.Stratton@pjc.com and Michael Sutter; michael.d.sutter@pjc.com; (iii) counsel for Key Bank, National Association, Moye White, 1400 16th St., 6th Floor, Denver, CO 80202, Attn:  Timothy Swanson; tim.swanson@moyewhite.com; (iv) counsel for Tree Line Direct Lending, LP, Latham & Watkins LLP, 330 North Wabash Ave., Suite 2800, Chicago, IL 60611, Attn: Matthew L. Warren; matthew.warren@lw.com; and Markus Williams & Young, 1700 Lincoln Street, Suite 4550, Denver, Colorado 80203, Attn: James T. Markus; jmarkus@maruswilliams.com; and (v) counsel for the Committee (as defined below), CKR Law LLP, 1330 Avenue of the Americas, 14th Floor, New York, New York 10019;

2

Attn: David M. Banker (the "**Notice Parties**").  The failure to submit an Initial Indication shall not preclude a potential bidder from submitting a Qualified Bid pursuant to the procedures outlined below.

2.      **Participation Requirements**

(a)      To be qualified to receive any confidential information from the Debtors, a potential bidder must submit to the Debtors, prior to the receipt of any such information, an executed confidentiality agreement, in a form and substance acceptable to the Debtors.

3.      **Bid Requirements**

(a)      To constitute a Qualifying Bid (defined below) and participate at the Auction, a potential bidder (each a "**Bidder**") must submit the following to the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**") before the Bid Deadline (as defined below):

> (i)      a proposed asset purchase agreement (the "**Competing Purchase Agreement**") executed by the Bidder that (i) provides for the purchase of some or all of the Assets along with a redlined, marked copy showing all changes between the Competing Purchase Agreement and the APA (the Debtors' counsel will provide a copy of the APA in Microsoft Word format to Bidders); (ii) identifies the Assets that the Bidder seeks to purchase and specifies the total consideration to be paid by such Bidder, and specifies how the total consideration is allocated among the applicable Assets; (iii) contains a list of the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors (whether set forth in the APA or a Competing Purchase Agreement, the "**Proposed Assumed Contracts**"); (iv) remains irrevocable until the earlier of the closing of a purchase of the Assets by the Successful Bidder and the Qualified Bidder Outside Date (as defined herein); (v) disclaims any right of the Bidder to receive any transaction or breakup fee, expense reimbursement or similar fee or payment, or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution; (vi) contains no financial or due diligence contingencies; (vii) provides for the Bidder to serve as a backup bidder

3

(the "**Back-Up Bidder**") if the Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined herein) for the applicable Assets; and (viii) contains a proposed closing date that is not later than ten days following the entry of an order approving the sale or such later date as may be agreed in writing by the Debtors, in consultation with the Secured Lenders and Committee, and the Bidder in their sole discretion (the "**Qualified Bidder Outside Date**");

(ii)     a cashier's check made payable to the order of the Debtors, or any other medium acceptable to the Debtors in their sole discretion, in the amount equal to ten percent (10%) of the purchase price set forth in such Competing Purchase Agreement (the "**Qualified Bidder's Deposit**"), which will be retained by the Debtors as a nonrefundable good faith deposit for application against the purchase price at the closing of the transaction or returned to the Bidder or otherwise applied as set forth in these Bidding Procedures;[3] and

(iii)    admissible evidence, satisfactory to the Debtors, establishing that the Bidder has the financial ability to pay the purchase price and provide adequate assurance of future performance under all Proposed Assumed Contracts, in the form of (i) affidavits or declarations; and (ii) current audited financial statements and the latest unaudited financial statements of the Bidder or, if such Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements and the latest unaudited financial statements of the equity holders or sponsors of such Bidder who will guarantee the obligations of such potential bidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Debtors to make a reasonable determination as to such Bidder's financial and other capabilities to consummate the Sale.

(b)     A bid received from a Bidder (and any bid submitted at the Auction by a Bidder) that meets the requirements set forth above will be considered a "**Qualified Bid**" if, in the good faith opinion of the Debtors, after consulting with their financial and legal advisors and with their secured lenders, Key Bank, National Association and Tree Line Direct Lending, LP (together, the "**Secured Lenders**") and the Committee, the Debtors reasonably believe that such bid would

---

[3] The Stalking Horse Bidder's deposit is $1,300,000.00.

be consummated before the Qualified Bidder Outside Date if selected as a Successful Bid (as defined below).  Each Qualified Bidder will be notified within 48 hours of receipt of its bid by the Debtors whether such Qualified Bidder's bid has been deemed a Qualified Bid.

(c)     Each Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making any bids; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Bidding Procedures or, as to the Successful Bidder(s), the asset purchase agreement with such Successful Bidder(s).

(d)     The Stalking Horse Bidder, and any entity that submits a timely Qualified Bid accompanied by all items required to be submitted along therewith in accordance with these Bidding Procedures (an "**Initial Qualifying Bid**"), shall each be deemed a "**Qualified Bidder**" and may bid at the Auction, if conducted, for the Assets specified in the APA or Competing Purchase Agreement, as applicable, and, at the Debtors' discretion, Assets not specified therein. Except as otherwise provided herein, any entity (other than the Stalking Horse Bidder) that fails to submit a timely, conforming Initial Qualifying Bid, as set forth above, shall be disqualified from bidding for the Assets at the Auction.  The Debtors shall, promptly upon receipt of any Initial Qualifying Bid, provide copies of such Initial Qualifying Bid to the Stalking Horse Bidder and to counsel for the Secured Lenders and Committee.

5

(e)      Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Bidders to aggregate two or more bids into a single consolidated Qualified Bid prior to the Bid Deadline, or (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. The Debtors reserve the right to, in consultation with the Secured Lenders and Committee, cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

4.      **Bid Deadline**

(a)      The deadline for submitting bids by a Qualified Bidder shall be **April 4, 2019** at **5:00 p.m.** (prevailing Mountain Time) (the "**Bid Deadline**").

(b)      Before the Bid Deadline, a Qualified Bidder that desires to make a bid shall deliver written copies of its bid via overnight mail and email to the Notice Parties.

(c)      The Debtors may, in consultation with the Secured Lenders and Committee, extend the Bid Deadline up until the start of the Auction without further notice, but shall not be obligated to do so.

5.      **Additional Stalking Horse Bidder**

(a)      Following entry of the Bidding Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment and after consulting with the Secured Lenders and Committee, to select one or more potential bidders to act as a stalking horse bidder for any of the Assets other than the Covered Assets (an "**Additional Stalking Horse Bidder**"), and may agree to provide such Additional Stalking Horse Bidder(s) certain bid protections, including an expense reimbursement and/or a break-up fee; provided that any such

6

bid protections shall be subject to approval by the Court, which the Debtors may seek on an expedited basis.

(b)     Other than the Stalking Horse Bidder or an Additional Stalking Horse Bidder approved by the Debtors or as otherwise provided for herein, no person or entity shall be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid, such person or entity is deemed to have waived the right to request or file with the Court any request for expense reimbursement or any fee of any nature, including under section 503(b) of the Bankruptcy Code.

6.      **Right to Credit Bid**

For purposes hereof, should any Secured Lender submit a credit bid, such Secured Lender shall be deemed to be a Qualified Bidder, and any such credit bid shall be considered a Qualified Bid and may be submitted at any time prior to or at the Auction provided that it otherwise complies with the requirements for a Qualified Bid as set forth above, *provided, that*, notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, from and after the submission of such credit bid, the Debtors are shall not be required to consult with the applicable Secured Lender or obtain the consent of such Secured Lender in connection with the Sale unless and until such credit bid is withdrawn in writing by such Secured Lender.  A credit bid, if any, will not impair or otherwise affect the Stalking Horse Bidder's rights under the Bidding Procedures Order.

7.    **Auction**

(a)    If no conforming Initial Qualifying Bid is received, the Debtors may elect not to conduct an Auction and instead request at the Sale Hearing that the Court approve the APA, including the Sale of the Covered Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and request that the Sale Order shall be immediately effective upon entry, notwithstanding Bankruptcy Rule 6004(h).  If conforming Initial Qualifying Bid(s) for some or all of the Covered Assets are received, the Debtors reserve the right to not conduct an Auction and instead request at the Sale Hearing that the Court approve the APA, including the Sale of the Covered Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and request that the Sale Order shall be immediately effective upon entry, notwithstanding Bankruptcy Rule 6004(h), if the Debtors, in exercising their reasonable business judgment and in consultation with the Secured Lenders and Committee, determine that such Initial Qualifying Bid(s) are not, and cannot be improved to be, higher or otherwise better offer(s) than that set forth in the APA.

(b)    If conforming Initial Qualifying Bids are received, but are for certain Assets for which there are no competing Initial Qualifying Bids, the Debtors reserve the right to not conduct an Auction and instead request at the Sale Hearing that the Court approve the Competing Purchase Agreement(s) (including the assignment of the Assumed Contracts, if any) to such Qualified Bidder(s).

(c)    If one or more conforming Initial Qualifying Bids are received, the Debtors may, in exercising their reasonable business judgment and in consultation with the Secured Lenders and Committee, conduct an Auction for any or all of the Assets, in which the Stalking Horse

8

Bidder and all other Qualified Bidders may participate.  The Auction shall be conducted at the offices of Brownstein Hyatt Farber Schreck LLP, 410 17th Street, Suite 2200, Denver, Colorado 80202 on **April 9, 2019 at 9:00 a.m. (prevailing Mountain Time)**, or such other place and time as the Debtors may determine, so long as such change is communicated reasonably in advance to all Qualified Bidders and other invitees, if any.

(d) The following procedures will govern the Auction:

(i) all Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court, agreeing to abide by and honor the terms of these Bidding Procedures and not seek to reopen the Auction after the Auction, and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the Assets;

(ii) all Qualified Bidders (other than the Stalking Horse Bidder) shall be deemed to consent to provide the Debtors with admissible evidence in the form of affidavits or declarations establishing (A) the Qualified Bidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code; and (B) that the Qualified Bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Purchase Agreement including such additional financial or other conditions made as part of any Overbids at the Auction;

(iii) each Qualified Bidder desiring to participate in the Auction must have at least one individual representative with authority to bind the Qualified Bidder in attendance at the Auction, and only Qualified Bidders may bid at the Auction;

(iv) prior to the commencement of the Auction, the Debtors, in consultation with the Secured Lenders and Committee, shall determine which Qualified Bid(s) constitute the highest or otherwise best Qualified Bids (the "**Baseline Bids**" and, each, a "**Baseline Bid**") for the applicable Assets;

(v) bidding at the Auction will begin with the Baseline Bid(s) and continue, in one or more rounds of bidding, so long as, during each round, at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (an "**Overbid**") and (ii) the Debtors determine, in consultation with the Secured Lenders and Committee, that such Overbid or combination of Overbids is (a) for the first round, a higher or otherwise better offer than

9

the Baseline Bid(s) (taking into account, if applicable, the bid protections and Breakup Fee granted to the Stalking Horse Bidder  by the APA (the "**Stalking Horse Bidder Fee**") and any bid protections granted to any Additional Stalking Horse Bidder) and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid(s) (as defined below);

(vi)    with respect to the Assets set forth in the APA, the initial Overbid must be valued at a value at least $675,000 above the value of the Stalking Horse Bid, *provided, however,* it being understood a Bid for such Assets could occur at any time during the Auction.  If the Stalking Horse Bidder submits an Overbid, it will receive a credit equal to the Bidder Fee when bidding during the Auction.  Additional consideration in excess of the amount set forth  in the respective Starting Bid may include cash and/or noncash consideration, *provided*, *however*, that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment;

(vii)    the Debtors, in their sole discretion and in consultation with the Secured Lenders and Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, including, but not limited to, bidding increments and other requirements for each round of bidding, provided that such rules are (A) not inconsistent with the order entered by the Court approving these Bidding Procedures, the Bankruptcy Code or any other order of the Court entered in connection herewith and (B) disclosed to each Qualified Bidder;

(viii)    during the course of the Auction, the Debtors shall, after the submission of each Overbid, inform each Qualified Bidder which Overbid(s) reflects, in the Debtors' view, the highest or otherwise best Bid for the applicable Assets (the "**Leading Bid(s)**");

(ix)    bidding on different Assets or sets of Assets may, at the Debtors' discretion, proceed separately or simultaneously;

(x)    the Debtors reserve the right, in their reasonable business judgment, to adjourn the Auction one or more times to, among other things: facilitate discussions between the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the Sale at the prevailing Overbid amount;

(xi)    the Auction shall continue until there are Qualified Bid(s) that the Debtors determine, in consultation with the Secured Lenders and Committee, are the highest and/or best offer for the purchase of the applicable Assets (the "**Successful Bid(s)**") and the Qualified Bidder(s) (or the Stalking Horse Bidder) submitting such bid(s) (the "**Successful Bidder(s)**");

(xii)   the Debtors may evaluate competing bids in a manner that will maximize the aggregate value to the estates, and in making the determination of which Qualified Bid(s) constitutes an Overbid, a Leading Bid or the Successful Bid(s), the Debtors may, in consultation with the Secured Lenders and Committee, take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, including, among other things: (a) the type and amount of the Assets sought and the liabilities of the Debtors to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the proposed transaction, the conditions thereto, and the timing thereof; (d) any excluded Assets, executory contracts, or unexpired leases; (e) any purchase price adjustments; (f) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid; (g) whether the Bid is a bid for only some of the Assets; (h) the tax consequences of such Qualified Bid; and (i) the impact, if any, of any bid protections or Stalking Horse Bidder Fee that might be required to be paid to the Stalking Horse Bidder or Additional Stalking Horse Bidder(s);

(xiii)  the Debtors may, in their sole discretion, designate Back-Up Bid(s) (and the corresponding Back-Up Bidder(s)) to purchase some or substantially all of the Assets in the event that the Successful Bidder(s) do not close their respective Sale;

(xiv)   if, at the Auction's conclusion and consistent with the Bidding Procedures' terms, the Stalking Horse Bidder's final bid for the Covered Assets is higher or better than the highest bid made by any Qualified Bidder for the same, such final bid shall be the Successful Bid with respect to the Covered Assets, the Stalking Horse Bidder shall be the Successful Bidder with respect to the Covered Assets and the Bankruptcy Court shall approve the APA, including the Sale of the Covered Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and authorize the Debtors to sell the Covered Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and the amount of the Stalking Horse Bidder's final bid shall constitute the Purchase Price under the APA; and

11

(xv)   for the avoidance of doubt, the Debtors may elect to deem the Stalking Horse Bidder's final bid to be the Successful Bid, notwithstanding the receipt of an apparently higher bid from another Qualified Bidder, if the Debtors reasonably conclude, in consultation with the Secured Lenders and Committee, that the Qualified Bidder may not be able to close on a timely basis (based on antitrust or other regulatory issues, experience, or other considerations) acceptable to the Debtors.

ANY SUCCESSFUL BID(S) AND ANY BACK-UP BID(S) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON A SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.

8.     **Sale Hearing**

A hearing to consider approval of the Sale to the Successful Bidder(s) (or to approve the APA if no Auction is held or the Successful Bid is by the Stalking Horse Bidder) will take place on **April 16, 2019 at 9:30 a.m.** (prevailing Mountain Time) in the courtroom of the Honorable Kimberley H. Tyson in the United States Bankruptcy Court for the District of Colorado, 721 19th St., Denver, Colorado 80202 (the "**Sale Hearing**").

9.     **Back-Up Bidder**

Notwithstanding any of the foregoing, in the event that the Successful Bidder(s) fails to consummate the Sale by the date that is 14 days after the outside date of the applicable asset purchase agreement (or such date as may be extended by the Debtors with the agreement of the Back-Up Bidder(s)), the Back-Up Bid(s) will be deemed to be the Successful Bid(s), the Back-Up Bidder(s) will be deemed to be the Successful Bidder(s), and the Debtors will be authorized, but not directed, to close the Sale to the Back-Up Bidder(s) subject to the terms of the Back-Up Bid(s) without the need for further order of the Court and without the need for further notice to any interested parties *provided, however*, in the event the Stalking Horse Bidder is designated a

12

Back-Up Bidder and ultimately deemed a Successful Bidder, the Stalking Horse Bidder shall only be obligated to close the Sale on the terms and conditions set forth in the APA.

10.     **Return of Qualified Bidder's Deposit**

Except with respect to a Successful Bidder and Back-Up Bidder, all Qualified Bidders' Deposits shall be returned within three business days after entry of the Sale Order, or an earlier date as the Debtors deems appropriate.

The Debtors in their sole discretion, with the consent of the Secured Lenders and Committee, may reimburse any Qualified Bidder's expenses associated with the bidding process and the Auction up to $50,000.

13